212 N.J. Super. 124 (1986)
514 A.2d 75
CARMELLA ANTENUCCI, PLAINTIFF-APPELLANT,
v.
MR. NICK'S MENS SPORTSWEAR, DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT, AND BARNATHAN BROTHERS INC., THIRD-PARTY DEFENDANTS-RESPONDENTS.
CARMELLA ANTENUCCI, PLAINTIFF-RESPONDENT,
v.
MR. NICK'S MENS SPORTSWEAR, DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT, AND BARNATHAN BROTHERS, INC., THIRD-PARTY DEFENDANT-APPELLANT, AND RICCARDO MARRERO, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1986.
Decided August 20, 1986.
*126 Before Judges FRITZ, GAYNOR and BAIME.
Lane M. Ferdinand argued the cause for appellant Carmella Antenucci.
Allan Maitlin argued the cause for appellant Barnathan Brothers, Inc. (Feuerstein, Sachs, Maitlin, Rosenstein & Fleming, attorneys).
Donald L. Crowley, argued the cause for respondent Mr. Nick's Mens Sportswear (Gorrin, Whitken & Crowley, attorneys).
Respondent Barnathan Brothers, Inc. brief was suppressed.
The opinion of the court was delivered by GAYNOR, J.A.D.
These matters involve the asserted liability of a commercial tenant for injuries sustained by a pedestrian because of the poor condition of the sidewalk abutting the store premises, and the effect of the tenant's failure to comply with the provision in the lease requiring it to obtain liability insurance for the benefit of the landlord. As the cases have a common factual genesis we consolidate them for the purposes of this opinion and disposition.
Defendant, Mr. Nick's Mens Sportswear (Mr. Nick's) was the lessee and sole occupant of the commercial premises located at No. 6053 Bergenline Avenue, West New York, owned by the third-party defendant, Barnathan Brothers, Inc. (Barnathan).[1] On April 18, 1983, while plaintiff was window shopping in the early evening in front of defendant's store, her shoe became lodged in a hole in the sidewalk causing her to fall forward and *127 sustain physical injuries.[2] This action was commenced against Mr. Nick's who then sought indemnification, contribution or apportionment of the claim from the landlord and the sidewalk repairman, Ricardo Marrero (Marrero). These parties in turn cross-claimed for contribution and indemnification. Barnathan also counterclaimed against Mr. Nick's for indemnification pursuant to the lease provision requiring the lessee to obtain liability insurance naming the landlord as an insured.[3] Thereafter, plaintiff amended her complaint to include Barnathan and Marrero as direct defendants.
Marrero was dismissed from the case on his motion for summary judgment. Mr. Nick's then moved for summary judgment against the plaintiff and also against Barnathan on its counterclaim. Barnathan cross-moved for summary judgment against Mr. Nick's on its claim under Paragraph 28 of the lease. The motions were decided in Mr. Nick's favor resulting in Barnathan being forced to defend against plaintiff's action, which it ultimately settled for $66,500. However, before the settlement was consummated, Barnathan's insurer was declared insolvent.
The matter is now before this court on Barnathan's appeal from the denial of its motion for summary judgment on the counterclaim and the grant of Mr. Nick's motion and also on *128 plaintiff's appeal from the summary judgment dismissing her complaint against Mr. Nick's.

I.
In granting Mr. Nick's motion for summary dismissal of the complaint, the trial judge noted that present law does not impose upon commercial tenants the duty to repair the sidewalks abutting the leased premises. The judge agreed with the rationale of the decision in Walushen v. Maffey, 190 N.J. Super. 645 (Law Div. 1983) that a commercial tenant "probably does not have the right, much less the obligation" to keep an abutting sidewalk in repair and that the doctrine of Stewart v. 104 Wallace St., Inc., 87 N.J. 146 (1981) imposing such a duty upon owners of commercial property should not be extended to their tenants. We are constrained to disagree with the trial judge in this regard as, in our view, the policy considerations underlying the holding in Stewart have equal applicability in this case to a lessee who is in exclusive possession of commercial premises abutting a sidewalk.
While Stewart imposed liability upon a commercial landowner for the disrepair of the abutting sidewalk, it did not make a distinction between the owner and a tenant in exclusive possession of the commercial premises. The public policy considerations found by Stewart to require the change in the common law rule pertaining to sidewalk liability have validity whether the defendant is the owner or an exclusive occupant of the commercial property. In either case, the primary right of the public to the use of the sidewalk is the same. The resulting incentive to keep the abutting sidewalk in good repair applies to either the property owner or the lessee in exclusive possession and the harshness of the non-liability rule is ameliorated by the imposition of a duty upon the exclusive occupant as well as the owner of the abutting premises. Moreover, the concept of enterprise liability is equally applicable to a commercial tenant *129 and a commercial landowner. As noted in Stewart, "sidewalks provide commercial owners with easy access to their premises and increase the value of their property. Public use of commercial establishments is facilitated by the existence of sidewalks." 87 N.J. at 152. This rationale also applies to one who is the exclusive occupier of the premises. Accordingly, we find sufficient direction in Stewart to impose upon a lessee in exclusive possession of premises abutting a public sidewalks a duty to keep the walkway in good repair for the benefit of pedestrians. See Jackson v. K-Mart Corp., 182 N.J. Super. 645 (Law Div. 1981).
Furthermore, we find no indication in the decisions subsequent to Stewart that the rule may not be applied to a lessee who was the sole occupant of the abutting commercial premises. See Mirza v. Filmore Corp., 92 N.J. 390 (1983); Cogliati v. Ecco High Frequency Corp., 92 N.J. 402 (1983); Hambright v. Yglesias, 200 N.J. Super. 392 (App.Div. 1985); Lombardi v. First United Methodist Church, 200 N.J. Super. 646 (App.Div. 1985).
It is noted that pre-Stewart decisions made no distinction between an owner or an occupier in assessing liability for defective sidewalks in fashioning exceptions to the nonliability rule. See generally McKeown v. King, 99 N.J.L. 251 (E. & A. 1923) (tenant under duty to use the care of an ordinarily prudent person in keeping abutting sidewalk in a reasonably safe condition for use by pedestrians); Restaino v. Griggs Motor Sales, Inc., 118 N.J.L. 442 (Sup.Ct. 1937) (tenant required to exercise care of an ordinarily prudent person in keeping the premises in a reasonably safe condition for benefit of a passing pedestrian); Longhi v. Raymond-Commerce Corp., 34 N.J. Super. 593 (App.Div. 1955) (as a lessee becomes for the time being the owner and occupier of the demised premises, it may be liable to a pedestrian for the continuance of a defect in the sidewalk created by the lessor); Krug v. Wanner, 28 N.J. 174 *130 (1958) (both landlord and tenant had duty to make necessary repairs to sidewalk cellar door and failure to do so could render them liable to the injured plaintiff pedestrian); Merkle v. Safeway Stores, Inc., 77 N.J. Super. 535 (Law Div. 1962) (a tenant is liable for injuries to customer who had fallen on an ice-covered public sidewalk connecting the store to its parking lot); Davis v. Pecorino, 69 N.J. 1 (1975) (an abutting landlord or occupier owed pedestrians using the public sidewalk a duty of reasonable care to keep the walkway free of hardened snow).
We emphasize that our extension of the Stewart rule in this case applies only to a commercial tenant who is in exclusive possession of the premises abutting the sidewalk. See Knickerbocker v. City of Scranton, 344 Pa. 317 (Sup.Ct. 1942). Thus, we do not address the situation of a multiple tenanted building as presented in Walushen v. Maffey, supra. However, to the extent that Walushen differs from our conclusion herein, it is disapproved.
As Mr. Nick's nonliability was not resolvable as a matter of law on the basis of its being the lessee rather than the owner of the commercial property, summary disposition of plaintiff's claim was inappropriate. The assessment of its liability, as well as the owner's, were properly matters for jury determination.

II.
In ruling in favor of Mr. Nick's on Barnathan's counterclaim based on the lessee's failure to comply with the lease provision requiring that it obtain liability coverage for the landlord, the trial judge reasoned that no viable claim for indemnification existed as Barnathan had its own policy and thus had not incurred any additional expense or liability due to Mr. Nick's noncompliance with this requirement of the lease. The judge did not consider Robinson v. Janay, 105 N.J. Super. 585 (App.Div. 1969) to be controlling in view of the distinguishing *131 fact that there the landlord did not have insurance and thus was exposed personally to a judgment for damages.
While this conclusion might have been appropriate if the matter were truly one of indemnification, it overlooked the contractual nature of the issue. Here, as in Robinson, the lessee contracted to provide liability insurance coverage for the landlord. Because of its breach of that covenant it was liable for the losses sustained by the landlord flowing from that breach. That Barnathan had its own liability policy does not operate to absolve Mr. Nick's from the consequences of its failure to comply with its contractual obligations under the lease agreement. We are, therefore, constrained to reverse the trial court's rulings on the summary judgment motions pertaining to Barnathan's counterclaim.
However, contrary to Barnathan's contention that the damages flowing from Mr. Nick's breach have been fixed by the agreed settlement amount, further proceedings are required to establish those damages. R. 4:37-2(e) does not require, as asserted by the landlord, that Mr. Nick's be bound by the settlement negotiated with plaintiff. If the rule applies to the circumstances of this case, the settlement would be binding on Mr. Nick's only if it had notice of and the opportunity to participate in the negotiation of the settlement. The rule so requires. See Pappas v. Santiago, 66 N.J. 140 (1974). As it appears that Mr. Nick's did not participate in the settlement discussions, reasonableness of the settlement, as well as any other damages claimed, must be established by Barnathan in a plenary proceeding. See Young v. Steinberg, 53 N.J. 252, 255 (1969). R. 4:37-2(c).
The orders granting summary judgment to Mr. Nick's and denying Barnathan's cross-motion for summary judgment are reversed and the cases are remanded to the Superior Court, Law Division, Hudson County, for further proceedings consistent with this opinion.
NOTES
[1] Mr. Nick's had entered into possession of the premises on November 30, 1981 under an assignment of the lease from the original lessee.
[2] Sometime in April 1983 one of the owners of Mr. Nick's asked Barnathan to repair the cracks and holes in the sidewalk. In accordance with Barnathan's request, defendant hired Riccardo Marrero to make the repairs, the cost of which was deducted from the rent. The parties did not recall whether these repairs were made before, after, or were in progress at the time of plaintiff's accident.
[3] The 28th clause of the lease provided that:

The Tenant shall procure and pay for and give to the Landlord a plate glass insurance policy and a public liability insurance policy with limits of $250,000.00 to $500,000.00, naming the Landlord as an insured. In the event the Tenant does not supply the Landlord with the above insurance policies, the Landlord shall have the right to procure same and to add the premiums thereof to the amount of rent due on the month that the insurance policies go into effect as additional rent.